# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| HUMBERTO GUSTAVO MENENDEZ, deceased, by Marla Melissa Menendez, representative, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:10-CV-53 ) |
| WAL-MART STORES INC., et al., | ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

Before the Court are the parties' briefs on the determination of applicable law in this wrongful death action transferred here from the Southern District of Texas. (Docket # 207-11.) Defendants argue that Indiana law applies to this action, while Plaintiffs contend that it should be governed by Florida law.[1] On March 21, 2011, District Judge Jon DeGuilio entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72.1, referring this case to the undersigned Magistrate Judge to prepare a report and recommendation on the motion. (Docket # 212.) Accordingly, this Report and Recommendation addresses whether Indiana or Florida law should govern the issues in this dispute.

For the following reasons, the undersigned Magistrate Judge finds Defendants' arguments

---

[1] Plaintiffs have abandoned their original position that Texas law should govern this action. (*Compare* Docket # 208, 211, *with* Docket # 140, 147.) On that front, since the parties do not currently contend that the substantive law of any state other than Florida or Indiana controls, "we need not discuss the contacts, interests or applicability of the laws of [other] states." *Crisman v. Cooper Indus.*, 748 S.W.2d 273, 276 (Tex. App. 1988). Instead, the Court's inquiry is limited to whether Indiana or Florida substantive law should apply. *Id*.

persuasive, and thus will recommend that Indiana law be applied to this action.

## I. PROCEDURAL BACKGROUND

Plaintiffs sued Defendants for negligence in Hidalgo County, Texas, District Court after Humberto Gustavo Menendez became pinned between an overhead steel structure and an aerial lift basket on November 20, 2006, while working on the premises of a Wal-Mart store in Gas City, Indiana, and died shortly thereafter. (Docket # 1.) Defendants removed this case to federal court in the Southern District of Texas on November 26, 2008, under 28 U.S.C. § 1332(a). (Docket # 1.) The removal was contested by Plaintiffs, and they appealed the decision. (Docket # 102-09.) The Fifth Circuit Court of Appeals, however, later affirmed the removal. *See Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. Appx. 62 (5th Cir. Feb 1, 2010) (unpublished).

On August 26, 2009, Defendants filed a motion to transfer venue for the convenience of the parties from the Southern District of Texas to the Northern District of Indiana. (Docket # 79.) Plaintiffs initially opposed the motion but later withdrew their objection. (Docket # 93, 112.) Consequently, on February 11, 2010, the case was transferred to this Court. (Docket # 116.)

On March 15, 2010, the Court conducted a status conference at which the parties were directed to file cross motions, responses, and replies concerning the determination of choice of law. (Docket # 132.) On April 5, 2010, Defendants requested time to complete certain discovery before filing their motion concerning the determination of choice of law. (Docket # 137.) After reviewing the parties' briefs on the matter, the Court acknowledged on May 10, 2010, that the choice-of-law issue would require more discovery and was more complicated that either the Court or the parties appreciated at the March 15, 2010, status conference. (Docket # 155.) Accordingly, it denied the two premature motions concerning choice of law (Docket # 138, 140), and the

Defendants' motion to complete more discovery to respond to such motions was deemed moot. (Docket # 137.)

At the most recent status conference on January 24, 2011, the undersigned Magistrate Judge established a briefing schedule for the choice-of-law issues and vacated all discovery deadlines, to be reset after the Court determines the applicable law in the case. (Docket # 203.) On February 22, 2011, the parties filed cross motions and opening briefs on the choice-of-law issues, and on March 11, 2011, they filed cross-responses. (Docket # 207-11.) The parties waived the filing of reply briefs. (Docket # 203.)

## II. CHOICE-OF-LAW PRINCIPLES AND THE "MOST SIGNIFICANT RELATIONSHIP" TEST

A federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law principles. *Jaurequi v. John Deere Co.*, 986 F.2d 170, 172 (7th Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Therefore, "[w]hen a case is transferred from one federal district court to another pursuant to 28 U.S.C. § 1404, the choice-of-law principles of the state in which the original district court sits—in this case [Texas]—govern the case." *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 963 n.7 (7th Cir. 2002) (citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990); *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993)).

Here, Plaintiffs' wrongful death and survival claims could have been asserted in Texas only under § 71.031 of the Texas Civil Practice and Remedies Code, which dictates the circumstances under which a wrongful death or personal injury suit can be filed in Texas when the act or omission causing the death or injury takes place in another state. Section 71.031(c) provides that in these cases, "the court shall apply the rules of substantive law that are appropriate

3

under the facts of the case."

To determine under § 71.031 what law is "appropriate under the facts of the case", the Texas Supreme Court has relied upon the "most significant relationship" test from the Restatement (Second) of Conflicts of Law (the "Restatement"). *Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 874-75 (E.D. Tex. Sept. 17, 2002); *Beatty v. Isle of Capri Casino, Inc.*, 234 F. Supp. 2d 651, 654 (E.D. Tex. 2002); *Total Oilfield Servs., Inc. v. Garcia*, 711 S.W.2d 237, 238 (Tex. 1986); *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979); *see* RESTATEMENT §§ 6, 145.

"Section 6 of the Restatement contains the general principles involved in the conflicts analysis whereas Restatement Section 145 lists the factual matters to be considered when applying the Section 6 principles to a given case." *Beatty*, 234 F. Supp. 2d at 654. "These factual matters are determinative as to which state has the most significant relationship with the case." *Id.* "Application of the 'most significant relationship' test does not turn on the number of contacts with one state, but more importantly on the qualitative nature of those contacts as affected by the policy factors set out in section 6 of the Restatement." *Bain*, 257 F. Supp. 2d at 874 (citations and internal quotation marks omitted)).

Section 6 of the Restatement, which articulates the general principles in the conflicts analysis, states:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of

>    those states in the determination of the particular issue,
>    (d) the protection of justified expectations,
>    (e) the basic policies underlying the particular field of law,
>    (f) certainty, predictability and uniformity of result, and
>    (g) ease in the determination and application of the law to be applied.

In turn, § 145 of the Restatement states that the following factual matters should be considered when applying § 6 principles to a given case:

>    (a) the place where the injury occurred,
>    (b) the place where the conduct causing the injury occurred,
>    (c) the domicil, residence, nationality, place of incorporation and place of business, of the parties, and
>    (d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT § 145.

"The 'most significant relationship' test applies to each issue in the lawsuit." *Bain*, 257 F. Supp. 2d at 875. That is, "[e]ach substantive issue in the case mandates an independent, quantitative and qualitative evaluation and decision." *Jaurequi*, 986 F.2d at 173 (applying Texas choice-of-law rules). "Therefore, it is necessary for the court to analyze liability and damages separately." *Bain*, 257 F. Supp. 2d at 875.

Significantly, "[t]he Restatement's 'most significant relationship test' includes a presumption in favor of applying the law of the place of the injury", *Enter. Prods. Partners, L.P. v. Mitchell*, __ S.W.3d __, 2011 WL 693700, at *3 (Tex. App. Feb. 10, 2011), provided, however, that the place of injury cannot be said to be fortuitous or for other reasons bears little relation to the occurrence and parties. RESTATEMENT § 145 cmt. e. More particularly, § 146, governing personal injuries, and § 175, governing wrongful death, of the Restatement create a presumption that:

5

the law of the state where the injury occurred determines the rights and
liabilities of the parties, unless, with respect to the particular issue, some
other state has a more significant relationship under the principles stated
in section 6 to the occurrence and the parties, in which event the local law
of the other state will be applied.

*Enterprise Products*, 2011 WL 693700, at *3 (quoting RESTATEMENT §§ 146, 175).

### III.  FACTUAL MATTERS RELEVANT TO THE "MOST SIGNIFICANT RELATIONSHIP TEST"

#### *A.  The Place Where the Injury Occurred*

1.  On November 20, 2006, Mr. Menendez became pinned between an overhead steel structure and an aerial lift basket while working on the premises of a Wal-Mart store in Gas City, Indiana, and died shortly thereafter. (Docket # 1.)

#### *B.  The Place Where the Conduct Causing the Injury Occurred*

2.  The accident was investigated by IOSHA and local Indiana authorities, including the Gas City Police Department and the Grant County Coroner's Office. (Defs. First Am. Joint Mot. For a Determination of Applicable Law ("Defs.' Br.") 4.)

3.  At the time of the accident, Mr. Menendez was operating a lift purportedly designed and manufactured by Defendant JLG Industries, Inc., and owned and maintained by Defendants NES Rentals Holdings, Inc.; NES Equipment Services Corporation; and NES Equipment Rental, L.P. (collectively, "NES"). (Defs.' Br. 4, Ex. 13.)  The lift was leased by NES in Indiana to Steine Cold Storage and delivered to Mr. Menendez's supervisor at the Wal-Mart in Gas City, Indiana. (Defs.' Br. Ex. 2.)  NES's maintenance of the lift, from at least September 2005 through the date of the accident, was performed in Indiana. (Defs.' Br. Ex. 13.)

4.  Mr. Menendez's family filed a claim for death benefits under Indiana worker's compensation laws and against Steine Cold Storage, his employer at the time of the accident.

(Defs.' Br. Exs. 1, 14.) The investigation performed as a result of Mr. Menendez's family's Indiana worker's compensation claim concluded: "Cl[aimant] suffered a head/neck crushing when he raised the lift he was in too high. Based on the investigation, there was no malfunction or manufacturer[']s defect and it was determined it was operator error on the part of the employee." (Defs.' Br. Ex. 3.)

### C. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

5. According to his wife, Mr. Menendez was always in the United States working, but would return to Mexico every six months or so for about fifteen days. (Adelfa Menendez Dep. 34-36.) At the time of his death, Mr. Menendez resided in Marion, Indiana, ostensibly with a girlfriend who was "from this area". (Defs.' Br. Ex. 3.)

6. Mr. Menendez had been working at the Wal-Mart in Gas City, Indiana, since at least June 30, 2006. (Defs.' Br. Ex. 9.) During the five months in Indiana prior to his death, Mr. Menendez worked first for Defendant Hansen-Rice, Inc., but later worked for Steine Cold Storage, his employer at the time of the accident. (Defs.' Resp. 5, 7, Ex. 14.)

7. Mr. Menendez's previous work assignment, which had commenced on October 3, 2005, was at another Wal-Mart in Wisconsin. (Defs.' Br. 5, Exs. 9, 10.) While in Wisconsin, Mr. Menendez obtain a Wisconsin driver's license and established a checking account. (Defs.' Br. Ex. 5, 10; Defs.' Resp. 1.) In 2004 and 2005, prior to his job in Wisconsin, Mr. Menendez worked in Texas for various employers, including Hansen-Rice. (Defs.' Resp. Br. 4-5.)

8. Mr. Menendez's 2006 W-2 form reveals gross wages of $554.40 in Texas, $15,306.49 in Wisconsin, and $7,773.95 in Indiana. (Defs.' Br. Ex. 11.)

9. Mr. Menendez was employed in Florida as follows: by Dollar Rent A Car Systems

7

from December 15 to 23, 1999; by Corrosion Control Specialists from December 24, 1999, to May 18, 2001; by Eagle Drive Service, Inc., from March 10, 2000, to June 30, 2000; and by Florida Fleet Drivers, Inc., from March 17, 2000, to May 18, 2001. (Pls.' Br. Exs. 2, 3, 5, 6.)

10. Mr. Menendez filed a worker's compensation action in Florida in 2001 with respect to his employment with Corrosion Control Specialists. (Pls.' Br. Ex. 4.) Medical records indicate that in 2001 Mr. Menendez sought medical treatment at three health providers in Tampa, Florida. (Pls.' Br. Ex. 8.)

11. Mr. Menendez's 2004 and 2005 tax returns were filed in Tampa, Florida. (Pls.' Br. Exs. 9, 10.) His 2006 W-2 wage tax statement and 2006 Northern Trust Company form 1099-R listed a Tampa, Florida, address.[2] (Pls.' Br. Ex. 11.) Mr. Menendez's 401k profit sharing plan form and his IRA contribution form from State Farm also listed the Tampa address. (Pls.' Br. Ex. 12, 14.) Likewise, Mr. Menendez's driver's license report form from Hansen-Rice's employment file listed the Tampa, Florida, address. (Pls.' Br. Ex. 13.)

12. Mr. Menendez continued to use the Tampa, Florida, address while he was employed by North Star Painting in Ohio from September 27 to November 1, 2000. (Pls.' Br. Ex. 7.) On September 13, 2004, however, Mr. Menendez's employment file from Hansen-Rice listed his address as San Juan, Texas, when he was working in Sealy, Texas. (Pls.' Br. Ex. 15.) Similarly, on January 19, 2005, the employment file listed his address as Alton, Texas, when he was working in Bayton, Texas. (Pls.' Br. Ex. 15.) Nonetheless, on March 29, 2006, the employment file again listed the Tampa, Florida, address when Mr. Menendez was working in Beaver Dam,

---

[2] Plaintiffs do not dispute Defendants' assertion that the Tampa, Florida, address that Mr. Menendez used on various forms was the address of his sister. (Defs.' Resp. 2-3.)

Wisconsin. (Pls.' Br. Ex. 15.)

13. Plaintiffs (other than Mr. Menendez, of course) have spent their entire lives in Mexico, except that Marla Menendez traveled to Texas for a brief stay after Mr. Menendez's death.[3] (Grisell Menendez Dep. 12; Adelfa Menendez Dep. 13-16; Marla Menendez Dep. 19-28; Marlene Menendez Dep. 12, 14-15, 42.) None of them apparently have United States social security numbers. (Grisell Menendez Dep. 10; Adelfa Menendez Dep. 86-87; Marla Menendez Dep. 67; Marlene Menendez Dep. 12.)

14. Marla Menendez, the personal representative of Mr. Menendez's estate, has no idea why his estate was opened in Texas rather than Mexico. (Marla Menendez Dep. 79-81.) In the Estate's Application for Letters of Administration, she represented that Mr. Menendez's domicile was Mexico. (Defs.' Br. Ex. 4.)

15. No Defendant is incorporated in or has its principal place of business in Indiana or Florida. (Defs.' Second Am. Notice of Removal ¶ 13.) Apparently, however, all Defendants conduct business in Indiana. (Defs.' Br. 15.)

### D. *The Place Where the Relationship, if Any, Between the Parties Is Centered*

16. Of the parties' forty potential witnesses, eighteen appear to be either eyewitnesses to some part of the events related to Mr. Menendez's accident in Indiana, emergency personnel responding to the accident, government officials brought to the scene due to the accident, or employees of NES in Indiana. (Defs.' Br. 9.) Of the five potential corporate representatives identified by the parties, two are in Indianapolis, one is in Chicago, and two are in Arkansas.

---

[3] Although Plaintiffs' previous position in this lawsuit was that Marla Menendez is a citizen of Texas (Docket # 147), they currently do not dispute Defendants' assertion that she is domiciled in Mexico. (Defs.' Br. 7 (citing Marla Menendez Dep. 21-22).)

(Defs.' Br. 9.)

17. Plaintiffs withdrew their initial objection to Defendants' motion to transfer venue for the convenience of the parties and the witnesses, and thus ultimately acquiesced to the transfer of this case from Texas to Indiana. (Docket # 93, 112.)

## IV.  ANALYSIS

Having set forth the relevant factual matters, the "most significant relationship" test must now be applied with respect to both the liability issues and the damages issues, respectively, by considering these § 145 factual matters in conjunction with the general principles in the conflicts analysis identified in § 6 of the Restatement.

### *A.  The Liability Issues*

Recognizing the presumption in favor of the law of the state where the injury occurred as the starting point for the analysis, the various factors will be considered to determine if Florida, as advocated by Plaintiffs, has a greater interest in the determination of liability than Indiana, the state in which the injury occurred. *See Enterprise Products*, 2011 WL 693700, at *3.

#### 1. **The Place Where the Injury Occurred**.

Comment f to § 145 of the Restatement instructs that "the place of injury is of particular importance in the case of personal injuries . . . ."  It is undisputed that Mr. Menendez was injured and subsequently died in Gas City, Indiana.  Plaintiffs do not suggest, and wisely so, that Mr. Menendez's place of injury was merely "fortuitous" or "bears little relation to the occurrence and parties". RESTATEMENT § 145 cmt. e.

#### 2. **The Place Where the Conduct Causing the Injury Occurred**

Here, Plaintiffs make no argument, much less produce evidence, that *any* conduct causing

10

the injury occurred in Florida. That is, Plaintiffs do not suggest that the lift was designed, manufactured, sold, distributed, inspected, or maintained in Florida.

In fact, Plaintiffs do not dispute Defendants' assertion that Wal-Mart's conduct as it relates to the injury and death of Mr. Menendez would involve only its construction management practices occurring in Indiana, and that evidence of any inspection or maintenance of the subject lift by NES would have occurred in Indianapolis or South Bend, Indiana. The rental agreement for the lift indicated that it was shipped about three months before the accident to Mr. Menendez's supervisor at the job site in Gas City, Indiana.[4]

Moreover, "subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection." RESTATEMENT § 145 cmt. d. That is, "[w]hen the injury occurred in a single, ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort." RESTATEMENT § 145 cmt. d. "This is particularly likely to be so with respect to the issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues." RESTATEMENT § 145 cmt. d.

### 3. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

Plaintiffs do not dispute that they, with the exception of Mr. Menendez, are citizens of and

---

[4] The parties do not state in their briefs where the lift was designed or manufactured, but the record suggests that it was manufactured in Illinois. (*See* Docket # 138.) In any event, neither party indicates that the lift was designed or manufactured in Florida or Indiana.

domiciled in Mexico.[5] No Defendant is incorporated or has its principal place of business in Indiana or Florida. All Defendants apparently conduct business in Indiana, but there is no evidence that any Defendant conducts business in Florida.

As to Mr. Menendez, once he left Florida in 2001, it appears that he traveled at the direction of his employers and returned to Mexico periodically. At the time of the accident, Mr. Menendez had been living in Marion, Indiana, for about five months, having most recently worked and lived in Wisconsin. Accordingly, Defendants assert that Mr. Menendez resided in Indiana and used his sister's mailing address in Florida when convenient, but that he was domiciled in Mexico.[6] (Defs.' Resp. 2-3.) In support of this conclusion, they point to the Application for Letters of Administration dated May 7, 2008, in which Marla Menendez as the Estate's personal representative indicated that Mr. Menendez was domiciled in Mexico. (Defs.' Br. Ex. 4.)

Plaintiffs, however, ignore the representation on the Application for Letters of Administration and instead argue that Mr. Menendez was domiciled in Florida. They rely upon the fact that Mr. Menendez's Hansen-Rice personnel file in April 2006 listed a Florida address, that he had a Florida driver's license, filed federal taxes relative to the Florida address, worked in Florida from 1999 to 2001, used the Florida address for social security purposes, and that his life insurance policy benefits were sent to the Florida address after his death.

Of course, neither Plaintiffs nor Defendants address the fact that in its February 1, 2010, Order denying Plaintiffs' interlocutory appeal of the removal of this case, the Fifth Circuit Court

---

[5] *See* note 3, *supra*.

[6] Contrary to Plaintiffs' characterization of Defendants' argument (Pls.' Resp. 2), Defendants do *not* suggest that Mr. Menendez was domiciled in Indiana. (Defs.' Br. 15.)

of Appeals found Plaintiffs' representation that Mr. Menendez was a Texas citizen to be a "binding judicial admission". *See Menendez*, 364 Fed. Appx. at 68 n.6. Each party has indeed relied upon that finding in previous filings. (*See* Docket # 114, 147.)

Under Texas law, a "domicile" is defined as (1) an actual residence that is (2) intended to be a permanent home." *Bain*, 257 F. Supp. 2d at 876 (citing *Snyder v. Pitts*, 241 S.W.2d 136, 139 (1951)). "The Texas Supreme Court has construed 'home' as meaning a 'true fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. (citing *Ex Parte Blumer*, 27 Tex. 734 (1865)).

Here, although Plaintiffs have produced evidence that Mr. Menendez used the Florida address in various ways, the record is devoid of any evidence that he ever intended to return there. In fact, Plaintiffs have not produced *any* evidence indicating that Mr. Menendez physically returned to Florida after 2001. Moreover, as explained above, Plaintiffs at other times in this suit have represented that Mr. Menendez was domiciled in Mexico, where his wife and children are domiciled and to which he returned approximately every six months, as well as Texas. For these reasons, Plaintiffs' new argument that Mr. Menendez was domiciled in Florida at the time of the accident appears to be akin to forum shopping.

### 4. The Place Where the Relationship Between the Parties, if Any, Is Centered

This being a tort case, most of the Defendants, such as NES, who leased the lift, and JLG, who designed and manufactured the lift, did not have a direct relationship with Mr. Menendez. Therefore, their indirect relationship with Mr. Menendez is centered in Indiana, the site of the injury. *See, e.g.*, *Beatty*, 234 F. Supp. 2d at 655-56 (concluding that where the defendant did not have an individual relationship with plaintiff specifically, the parties' relationship was centered at

the place of injury).

While Hansen-Rice, Mr. Menendez's prior employer, did have a direct relationship with him, there is no evidence indicating that Mr. Menendez worked for Hansen-Rice in Florida, and Hansen-Rice's principal office is in Idaho. (Defs.' Second Am. Notice of Removal ¶ 13.) Of course, Mr. Menendez did work for Hansen-Rice in Indiana.

### 5. Summary of the Factual Matters and Policy Considerations

In weighing the criteria set forth in §§ 6 and 145 of the Restatement, both factual and policy considerations compel the conclusion that Indiana has the "most significant relationship" with the liability issues in this lawsuit. *See, e.g.*, *Bain*, 257 F. Supp. 2d at 877-78. As stated above, at least three of the factors set forth in § 145 point to Indiana. *Id*. First, Indiana is the place of the injury. *Id*. Second, Mr. Menendez resided in Indiana at the time of the accident, the subject lift was delivered to Indiana three months before the accident and its inspection and maintenance purportedly occurred in Indiana, and Wal-Mart's construction management practices in Indiana are applicable. *Id*. Indeed, entities constructing and supervising the construction of an Indiana facility are justified in expecting that Indiana law would apply to a claim against them by a worker residing and working in Indiana who was using equipment that had been operated and maintained in Indiana.

Moreover, the record evidences absolutely *no* link between Florida and three of the four factual matters articulated in § 145. The only relevant contacts that Florida has with this case is Plaintiffs' dubious assertion that Mr. Menendez was domiciled there.

In any event, with respect to liability issues, both the case law in Texas and the Restatement instruct this Court to place more emphasis on the place of the injury and alleged

misconduct than on the residential preference of the plaintiff. *Beatty*, 234 F. Supp. 2d at 656; *Bain*, 257 F. Supp. 2d at 878 (citing *Price v. Litton Sys., Inc.*, 784 F.2d 600, 604 (5th Cir. 1986) (finding that the place of injury and temporary place of residency of the plaintiff as the proper choice of law even if plaintiffs could show the wrongful conduct (a design defect) occurred elsewhere)). Therefore, even if Mr. Menendez was, in fact, domiciled in Florida, this would not overcome the fact that the injury and much of the relevant conduct took place in Indiana. *Id*.

Consequently, Indiana has the "most significant relationship" with the liability issues in this case under the Texas choice-of-law analysis, and therefore the undersigned Magistrate Judge will recommend that Indiana substantive law be applied to the liability issues.

### B. The Damages Issues

Having concluded that Indiana has the most significant relationship to the liability issues in this case, the Court must now determine the proper law to apply to the damages issues. *See Bain*, 257 F. Supp. 2d at 878) (bifurcating its discussion of liability and damages issues in its choice-of-law analysis); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (same). "The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff." *Torrington*, 46 S.W.3d at 848-49.

"The Texas Supreme Court . . . held that in 'considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important." *Bain*, 257 F. Supp. 2d at 878 (quoting *Torrington*, 46 S.W.3d at 849). "Rather, the most important contacts in determining which state's law governs compensatory damages will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the

15

defendant against financial hardship." *Torrington*, 46 S.W.3d at 849 (citations omitted); *see also Bain*, 257 F. Supp. 2d at 878; *Enterprise Products*, 2011 WL 693700, at *4.

Here, even though all of the Plaintiffs are domiciled in Mexico (with the exception of Mr. Menendez, whose domicile is disputed), Plaintiffs *do not ask the Court to apply the laws of Mexico*. *See Bain*, 257 F. Supp. 2d at 878-79 (eliminating the law of the plaintiffs' domicile in the analysis where plaintiffs did not request that such law be applied); *Perkins v. Dynasty Grp. Auto*, No. 08-01-00493-CV, 2003 WL 22810452, at *4 (Tex. App. Nov. 25, 2003) (noting that based on the parties' domiciles, California would be the state with the most interest, but this was of no moment since neither party sought to invoke the laws of California). And as to Defendants, their domiciles implicate a plethora of states *other than* Florida. *Cf.* RESTATEMENT §178 cmt. b ("In a situation where one state is the state of domicil of the defendant, the decedent, and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.").

Significantly, the parties acquiesced to the transfer of this case from Texas to Indiana, and the liability issues will be governed by Indiana law. "'Ease in the determination and application of the law to be applied' is one of the factors to be considered in resolving choice-of-law questions under the Restatement." *Torrington*, 46 S.W.3d at 850 (quoting RESTATEMENT § 6(2)(g)). Moreover, although less important with respect to the damages issues, Mr. Menendez resided in Indiana at the time of the accident. He had left Florida five years earlier and, while he used a Florida address at times, the record is devoid of any evidence that he intended to return there permanently. *See Bain*, 257 F. Supp. 2d at 878-79 (considering the decedent's residence at the time of the accident as a factor when determining the law applicable to damages). In addition,

16

as discussed earlier, much of the conduct that allegedly caused the injury occurred in Indiana. *See Torrington*, 46 S.W.3d at 850 (rejecting the plaintiff's domiciliary state when determining the law applicable to damages because, among other things, much of the conduct allegedly causing the injury occurred in the forum state).

Moreover, comment b to § 178 of the Restatement, which addresses damages in a wrongful death action, instructs: "The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action. The local law of this state will, however, be applied *unless some other state has a greater interest in the determination of this issue*." RESTATEMENT § 178 cmt. b (emphasis added). Thus,

> [i]n the simplest case, when the only identifiably competing state interests are that the plaintiffs are residents of one state and the defendants are residents of another, and no other factors would make the interests of one state any more significant than those of the other, wrongful death damages will generally be determined according to the law of the place of injury.

*Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex. App. 1990).

Here, it simply cannot be concluded that Florida has a greater interest in the determination of the issue of damages than Indiana when considering that: (1) Plaintiffs are residents of and domiciled in Mexico and have not established that Mr. Menendez's domicile was Florida, (2) Defendants are domiciled in various states other than Florida, (3) Mr. Menendez was a resident of Indiana at the time of his death, (4) much of the conduct allegedly causing the injury occurred in Indiana, and (5) the parties' relationship was primarily centered in Indiana. Rather, Indiana has the "most significant relationship" with the damages issues as well as the liabilities issues, and therefore the undersigned Magistrate Judge will recommend that Indiana law be applied to this

action in its entirety.

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Court GRANT Defendants' First Amended Joint Motion for a Determination of Applicable Law (Docket # 207), and apply Indiana law to this action in its entirety.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for Plaintiffs and Defendants.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

SO ORDERED.

Entered this 30th day of March, 2011.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge