IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| HUMBERTO GUSTAVO MENENDEZ, ) <br> deceased by Marla Melissa Menendez ) <br> representative, et al., ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br>     v. ) <br> ) <br> **WAL-MART STORES EAST LP, et al.,** ) <br> ) <br>     **Defendants,** ) | Case No: 1:10-cv-53 |

## OPINION AND ORDER

Before the Court is a Motion for Protective Order (Docket # 225) filed by Defendants JLG Industries, Inc.; Wal-Mart Stores East, LP; Wal-Mart Realty Company; Walton Construction Company, Inc.; Walton Construction Company, LLC; and Hansen-Rice, Inc. (collectively, the "Defendants"), requesting that the Court approve and adopt their proposed Protective Order that seeks to maintain as confidential their "equipment and building blueprints, engineering documents, specifications, designs and/or construction layouts."[1] (Docket # 230 Ex. 1 ¶ 1.) Plaintiffs Marla Melissa Menendez, individually and as representative of the Estate of Humberto Gustavo Menendez, and Humberto's wife and two other daughters (collectively, the "Plaintiffs") contend that Defendants' proposed Protective Order is too restrictive and that a "sharing protective order," which provides that confidential information may be shared with lawyers handling similar cases, is more appropriate.[2] (Docket # 228.)

---

[1] Defendants NES Rentals Holdings, Inc., and NES Equipment Services Corporation have not joined in, or opposed, the Motion for Protective Order.

[2] Together with their reply brief, Defendants filed the Affidavit of Brent M. Hoover (Reply Br. Ex. 2), which describes the steps that JLG takes to protect the secrecy of its blueprints and engineering documents. Plaintiffs filed

Ultimately, Plaintiffs' objection to the proposed Protective Order is unpersuasive, as good cause exists for the entry of a protective order with respect to Defendants' proposed category of proprietary blueprints and engineering information. Nevertheless, due to several deficiencies in Defendants' proposed Protective Order, the Motion for Protective Order will be DENIED WITHOUT PREJUDICE.

### A. Factual and Procedural Background

Plaintiffs sued Defendants for negligence in Hidalgo County, Texas, District Court after Humberto Gustavo Menendez became pinned between an overhead steel structure and an aerial lift basket while working on the premises of Wal-Mart on November 20, 2006, resulting in his subsequent death. (Docket # 1.) The lift was designed and manufactured by JLG and apparently rented to building contractors by NES. (Docket # 1.)

Defendants timely removed this case to federal court in the Southern District of Texas on November 26, 2008, under 28 U.S.C. § 1332(a). (Docket # 1.) On February 11, 2010, the case was transferred to the Northern District of Indiana. (Docket # 116.) A scheduling conference was conducted on June 8, 2010, at which the Court set an August 1, 2011, deadline for the completion of all discovery. (Docket # 160.) The discovery deadline was later extended to August 15, 2012. (Docket # 216.) On November 17, 2011, Defendants filed the instant Motion for Protective Order. (Docket # 225.)

---

a motion to strike this Affidavit (Docket # 231), contending that "it is nothing more than an unsworn statement" because it "does not comply with the foundational requirements of being sworn under the penalties of perjury" and, in any event, "new evidence in a reply is usually not allowed . . . ." (Pls.' Mot. to Strike ¶¶ 1, 4.) Defendants filed a response to the motion to strike, and Plaintiffs timely replied. (Docket # 232-33.) As described in footnote 4 *infra*, Plaintiff's motion to strike ultimately has no bearing on the Court's ruling on Defendants' Motion for Protective Order, and therefore the motion to strike will be DENIED AS MOOT.

## B. Applicable Legal Standard

"Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).  However, "[p]ursuant to Federal Rules of Civil Procedure 26(c)(1)(G), the court may enter a protective order 'requiring that a trade secret or other confidential research development, or commercial information not be revealed or be revealed only in a specified way.'" *Kraft Foods Global, Inc.*, No. 10 C 8006, 2011 WL 1557881, at *1 (N.D. Ill. Apr. 25, 2011) (quoting Fed. R. Civ. P. 26(c)(1)(G)).  "The party requesting a protective order has the burden of demonstrating to the court that 'good cause' exists for its issuance." *Jepson*, 30 F.3d at 858.  "The 'good cause' standard requires a balancing of the public and private interests involved." *Cook, Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 246-47 (S.D. Ind. 2001) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999)).

In establishing good cause, a protective order must only extend to "properly demarcated categor[ies] of legitimately confidential information." *Cincinnati Insurance*, 178 F.3d at 946; *see MRS Invs. v. Meridian Sports, Inc.*, No. IP 99-1954-C-F/M, 2002 WL 193140, at *1 (S.D. Ind. Feb. 6, 2002) (rejecting proposed protective order because categories of protected information were overly broad and vague).  For material to be protected, it "must give the holder an economic advantage and threaten a competitive injury—business information whose release harms the holder only because the information is embarrassing or reveals weaknesses does not qualify for trade secret protection." *Cook*, 206 F.R.D. at 248-49 (emphasis omitted).  "The risk . . . that the party receiving the discovery will share it with others does not alone constitute good cause for a protective order." *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 545 (N.D. Ind.

1991).

*C. Analysis*

Defendants' proposed Protective Order defines the term "Confidential Information" as "equipment and building blueprints, engineering documents, specifications, designs and/or construction layouts, which depict or contain information which JLG Industries, Inc., the Wal-Mart Defendants, Defendant Hansen-Rice, Inc[.,] and the Walton Defendants keep secret from their competitors and is not readily ascertainable by their competitors." (Proposed Protective Order p. 1. ¶ 1.)  Defendants explain that "good cause" exists for the Protective Order, asserting that disclosure of the Confidential Information "would threaten them with competitive injury because it would allow competitors to easily duplicate their designs." (Mot. for Protective Order 2.)

As stated earlier, "[a] protective order may authorize the parties to restrict public access to properly demarcated categories of legitimately confidential discovery documents if the judge . . . . satisfies himself that the parties know what the legitimate categories of protectable information are and are acting in good faith in deciding which parts of the discovery information qualify . . . ." *Cook*, 206 F.R.D. at 247.  Here, Defendants have adequately proposed a "properly demarcated categor[y] of legitimately confidential discovery documents" and described "the competitive harm likely to result from the disclosure" of such Confidential Information. *Id*. at 247-48.

In fact, Plaintiffs do not even challenge Defendants' proposed definition of "Confidential

4

Information" in their response to the Motion for Protective Order.[3] (*See* Docket # 228.)  Rather, their sole point of contention with Defendants' proposed Protective Order is whether Plaintiffs are entitled to the inclusion of a "sharing provision" in the order that allows Plaintiffs to share Defendants' Confidential Information with other attorneys representing plaintiffs in similar lawsuits.[4] (Resp. Br. 4-10.)

In that regard, "[u]se of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of Federal Rules of Civil Procedure . . . .  Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources." *Wauchop*, 138 F.R.D. at 547 (quoting *United States v. Hooker Chems. & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981)); *see Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980) ("The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation."); *see also Burlington City Bd. of Educ. v. U.S. Mineral Prods. Co.*, 115 F.R.D. 188, 190 (M.D.N.C. 1987) ("Permitting plaintiffs to share information helps counterbalance the effect uneven financial

---

[3] Although in one sentence in their response brief Plaintiffs suggest that Defendants "failed to prove the justification for a protective order, and . . . specify information that needs to be protected" (Resp. Br. 3), "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000); *see Clarett v. Roberts*, No. 09-2805, 2011 WL 4424790, at *8 (7th Cir. Sept. 23, 2011); *Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010); *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002).

[4] Because Plaintiffs do not challenge Defendants' proposed definition of "Confidential Information" and instead simply argue that the proposed Protective Order should include a "sharing provision," the Affidavit of Brent Hoover describing the steps that JLG takes to maintain the secrecy of the Confidential Information is ultimately immaterial to the Court's decision.  That is, even if Hoover's Affidavit were stricken, the Court's ruling would remain the same.  Therefore, Plaintiffs' motion to strike will be DENIED AS MOOT.

resources between parties might otherwise have on the discovery process, thereby protecting economically modest plaintiffs faced with financially well off defendants and improving accessibility to justice.").

Here, however, Plaintiffs have failed to provide any evidence that such collateral lawsuits actually exist. Consequently, any purported gain in judicial efficiency achieved in other cases through "sharing orders" is purely hypothetical in this case. *Cf. Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990) (finding that the sharing of discovery information was particularly appropriate "in tobacco tort cases in which individual plaintiffs must litigate against large, corporate defendants"); *Ward*, 93 F.R.D. at 579 (allowing sharing of discovery information where several hundred "fuel system integrity cases" involving Ford Pintos, all asserting the same design defect, had been filed in various district courts).

Furthermore, Defendants' proposed Protective Order seeks to protect only a discrete, properly demarcated category of propriety commercial information—Defendants' equipment and building blueprints, engineering documents, specifications, designs, and construction layouts that are kept secret from their competitors. *See, e.g.*, *Wauchop*, 138 F.R.D. at 547 (approving defendant's proposed protective order with respect to prohibiting the dissemination of confidential proprietary information, but rejecting the proposed order as to defendant's general concern that any shared discovery might be detrimental to its parallel litigation). That is, this is not a case where Defendants are attempting to seal *all* of their discovery documents based only on a general concern that Plaintiffs might share them with others—a basis which clearly falls short of establishing good cause. *See, e.g.*, *Ward*, 93 F.R.D. at 579-80 (declining to enter a non-sharing protective order where plaintiffs voluntarily agreed not to disclose any trade secrets and

the only remaining basis for the protective order was defendant's fear that plaintiffs would disclose discovery to certain "fly-by-night" non-lawyer experts); *Hooker*, 90 F.R.D. at 425-36 (finding that a non-sharing protective order was not warranted where defendants did not show that trade secrets or other proprietary information would be disclosed and instead merely argued that disclosure of discovery would be "detrimental to its position in parallel lawsuits"); *Patterson*, 85 F.R.D. at 153) (denying defendant's motion for a non-sharing protective order where defendant did not show that discovery involved trade secrets or confidential proprietary information, but instead simply expressed concern that plaintiff wanted to develop additional litigation against defendant). As a result, Plaintiffs' objection that Defendants' proposed Protective Order is too restrictive, and that a "sharing order" is more appropriate, is overruled.

Nevertheless, Defendants' proposed Protective Order contains several deficiencies that preclude its approval by the Court. First, the introductory paragraph of the proposed Protective Order recites that Plaintiffs and the NES Defendants agree and stipulate to the Order. (Reply Br. Ex. 1.) Of course, that is not the case, as Plaintiffs oppose the proposed Order and NES has not weighed in on the matter.

In addition, the proposed Protective Order seeks to protect documents "containing" Confidential Information, rather than solely protecting the Confidential Information itself through a method of redaction. (Proposed Protective Order p. 2 ¶ 1.) However, an order sealing documents *containing* confidential information is overly broad, as a document containing confidential information may also contain material that is not confidential, in which case a party's interest in maintaining the confidentiality of the information would be adequately protected by redacting only portions of the documents. *Cincinnati Insurance*, 178 F.3d at 945.

7

Finally, the proposed order states that the provisions of the order "shall continue to be binding" after termination of the litigation. (Proposed Protective Order ¶ 12.)  The Court, however, is unwilling to enter a protective order that suggests it retains jurisdiction of any kind after the resolution of the case. *See E.E.O.C. v. Clarice's Home Care Serv., Inc.*, No. 3:07-cv-601 GPM, 2008 WL 345588, at *2 (S.D. Ill. Feb. 7, 2008); *Large v. Mobile Tool Int'l, Inc.*, No. 1:02-CV-177, 2010 WL 3120254, at *1 (N.D. Ind. Aug. 6, 2010).

In sum, "[o]btaining a protective order in an appropriate case need not be a[n] onerous task.  But such an order may not issue absent an appropriate showing of good cause, as well as adherence to the other limitations the Seventh Circuit has emphasized apply to such orders." *Shepard v. Humke*, No. IP 01-1103-C-H/K, 2003 WL 1702256, at *2 (S.D. Ind. Mar. 28, 2003).  Therefore, for the foregoing reasons, the Court will DENY Defendants' Motion for Protective Order.  Defendants may, however, submit a revised protective order that cures the identified deficiencies and is consistent with the requirements of Rule 26(c)(1)(G) and Seventh Circuit case law.

### *D.  Conclusion*

For the foregoing reasons, Defendants' Motion for Protective Order (Docket # 225) is DENIED WITHOUT PREJUDICE.  Plaintiffs' Motion to Strike the Defective Affidavit of Brent M. Hoover (Docket # 231) is DENIED AS MOOT.

SO ORDERED.  Entered this 11th day of January, 2012.

s/Roger B. Cosbey
Magistrate Judge
United States District Court
